DOUGLAS J. OLDHAM v. BOYD C. MILLER, JR., COMMISSIONER, N. C.
DEPARTMENT OF MOTOR VEHICLES

No. 7715SC895

(Filed 3 October 1978)

**Automobiles § 126.3— breathalyzer test—who may ask driver to take**
    G.S. 20-16.2(c) does not provide that the "arresting officer" is the sole per-
son authorized to request that a driver submit to a breathalyzer test; rather,
the phrase "arresting officer" merely distinguishes between the two law en-
forcement officers present at the administration of the test and makes it clear
that the breathalyzer operator who gives the four-part warning set out in G.S.
20-16.2(a) is *not* the officer authorized to request that the driver take the test.

APPEAL by respondent from *Hobgood, Judge.* Judgment
entered 14 June 1977 in Superior Court, CHATHAM County. Heard
in the Court of Appeals 18 August 1978.

Petitioner sought review in the Superior Court, pursuant to
G.S. 20-16.2, of an order of the Department of Motor Vehicles
which revoked his driver's license for willful failure to take the
breathalyzer test.

At hearing, the evidence tended to show that the petitioner
was taken into custody on 13 July 1974 by Chatham County Depu-
ty Sheriff Larry Hipp for driving under the influence of alcohol.
Hipp had observed the petitioner making circles in the road and
hitting a ditch; he pursued the petitioner for several miles and
observed the petitioner turn off the road, miss his driveway and
go through a ditch and a garden and stop.

Deputy Hipp placed the petitioner in his squad car and took
him to the Siler City Police Department where he was met by
State Highway Patrolman W. H. Long. Deputy Hipp informed
Long of the manner in which petitioner was driving and of the
physical condition of the petitioner. Deputy Hipp then placed the
petitioner in Long's custody and left.

Long formally placed petitioner under arrest and obtained a
warrant for his arrest for driving under the influence of alcohol.
After the arrest, Patrolman Long asked petitioner to take a
breathalyzer test to be operated by Mr. Alphonzo Craven, Jr., a
licensed breathalyzer operator. Petitioner refused to take the
test.

The trial court held that the statute controlling the administration of breathalyzer tests, G.S. 20-16.2(c), required that "the arresting officer" ask the petitioner to submit to the test, and that Patrolman Long was not "the arresting officer" within the meaning of G.S. 20-16.2(c). The court held that the respondent had no authority to revoke the petitioner's driver's license and permanently enjoined and restrained the respondent from revoking the petitioner's license for his refusal to take the breathalyzer test on 13 July 1974.

*Attorney General Edmisten by Deputy Attorney General William W. Melvin and Assistant Attorney General William B. Ray for respondent appellant.*

*Barber, Holmes & McLaurin by Edward S. Holmes for the petitioner appellee.*

CLARK, Judge.

The sole question presented on appeal is whether or not Patrolman Long was authorized by G.S. 20-16.2(c) to request the petitioner to submit to a breathalyzer test. The respondent contends that any law-enforcement officer with probable cause to believe the person arrested was driving under the influence of alcohol may ask the arrested person to take the test. The petitioner claims that subsection (c) provides that *only* the arresting officer is authorized to make the request.

Subsection (c), as amended in 1973, provides:

"The arresting officer, in the presence of the person authorized to administer a chemical test, shall request that the person arrested submit to a test described in subsection (a). . . ."

Prior to the 1973 amendment, subsection (c) did not use the phrase "arresting officer" but referred to a "law-enforcement officer" with reasonable grounds to believe that the arrested person had been driving under the influence of alcohol. The reference to the "law-enforcement officer" in former subsection (c) is the same as that currently appearing in subsections (a) and (d). Those sections provide:

"(a) . . . The test or tests shall be administered at the request of a law-enforcement officer having reasonable grounds to believe the person to have been driving or operating a motor vehicle on a highway or public vehicular area while under the influence of intoxicating liquor. The law-enforcement officer shall designate which of the aforesaid tests shall be administered. . . ."

\*     \*     \*     \*

(d) . . . The hearing shall be conducted in the county where the arrest was made under the same conditions as hearings are conducted under the provisions of G.S. 20-16(d) except that the scope of such hearing for the purpose of this section shall cover the issues of whether the law-enforcement officer had reasonable grounds to believe the person had been driving or operating a motor vehicle upon a highway or public vehicular area while under the influence of intoxicating liquor, whether the person was placed under arrest, and whether he willfully refused to submit to the test upon the request of the officer. . . ."

Where a statute has two distinct subsections dealing with related matters, an amendment to one of the subsections will not ordinarily be construed to apply to the other also, since it will be presumed that if the Legislature had intended it to apply to both, it would have expressed such intent. *Arrington v. Stone & Webster Engineering Corp.*, 264 N.C. 38, 140 S.E. 2d 759 (1965); 12 Strong's N.C. Index 3d, Statutes, § 7, p. 79. Therefore, it is clear that the Legislature did not intend to modify subsection (a) and (d) when it altered the language in subsection (c).

The request by the law-enforcement officer referred to in subsection (a) has been construed to mean the request by the law-enforcement officer asking the breathalyzer operator to administer the test, rather than the request directed to the arrested person that he submit to the test. *State v. Randolph*, 273 N.C. 120, 159 S.E. 2d 324 (1968) (decided prior to the 1969 amendment.) This implies that the request directed to the suspect is controlled by subsection (c), and therefore only the "arresting officer" may make such request. The last sentence in subsection (d), however, indicates that the law-enforcement officer with reasonable grounds to believe that the suspect was driving under the in-

fluence may make both requests. That sentence provides that the issues before the court are whether the "law-enforcement officer" had reasonable grounds to believe that the suspect was driving under the influence of alcohol and whether the suspect refused to submit to the test upon request of the officer. A reading of this sentence indicates that a "law-enforcement officer" may make both the request directed to the breathalyzer operator and the suspect.

It appears then that the Legislature intended to utilize the phrase "the arresting officer" for a different purpose. The legislative history of G.S. 20-16.2(a),(c) and (d) indicates that the term was inserted as a means of distinguishing between the law-enforcement officer involved in the arrest and the law-enforcement officer who is to administer the test.

In the 1969 version of the statute there is no reference to an "arresting officer"; all the sections refer to a "law-enforcement officer." Nor is the law-enforcement officer who is to be the breathalyzer operator directly mentioned. The 1969 version of the statute, therefore, mentioned only *one* officer.

In 1971, subsection (d) was amended to include what is now the second sentence in G.S. 20-16.2(d). This sentence states: "If at least three days prior to hearing, the licensee shall so request of the hearing officer, the hearing officer shall subpoena the *arresting officer*. . . ." (Emphasis added). At the time this sentence was added to the statute, subsection (c) still provided that if the "person under arrest willfully refuses upon request of a *law-enforcement officer* to submit to a chemical test designated by the *law-enforcement officer* none shall be given." (Emphasis added.) Clearly, in 1971, subsection (c) authorized a law-enforcement officer with reasonable grounds to believe that the arrested person was driving under the influence of alcohol to request that the suspect take the test. The reference to "arresting officer" in the amendment to subsection (d) merely clarified which of the two law-enforcement officers who were present at the administration of the test must be subpoenaed for the hearing.

In 1973, subsection (a) was amended to provide that the breathalyzer operator must give a four-part warning to the suspect prior to administering the chemical test. Subsection (c) was amended at the same time. It was this revision of the sub-

section that changed the phrase "law-enforcement officer" to "arresting officer." Subsection (a), however, retained the old language referring to law-enforcement officer. Considering the amendments to subsection (a) and (c) together it is clear that the modification in subsection (c) was designed to distinguish between the law-enforcement officer with reasonable grounds to believe that the suspect was driving under the influence of alcohol, (i.e. the *arresting officer*) and the law-enforcement officer who is to administer the test and give the four-part warning.

The purpose of the statutory limitations upon who may request the test and who may administer the test is twofold: first, the statute assures the suspect that the test will not be administered unless the officer making the request has reasonable grounds to believe that the suspect was driving under the influence of alcohol, and second, it assures that the test will be administered fairly and impartially by preventing the officer who is involved in the arrest from administering the test himself. *See, State v. Stauffer*, 266 N.C. 358, 145 S.E. 2d 917 (1966).

Construing the phrase "arresting officer" to be a clarification of which officer must request that the test be taken, and which officer must be present at the hearing is consistent and in harmony with the above stated purposes and with the legislative history. Here, Patrolman Long clearly had probable cause to believe that the petitioner was driving while intoxicated, and he obtained a warrant for petitioner's arrest based on that information. In addition, Patrolman Long, who was as likely to be biased as Officer Hipp, did not administer the test himself, but requested a third person to do so.

G.S. 20-16.2(c) does not provide that the "arresting officer" is the sole person authorized to request that the petitioner submit to the test. The phrase "arresting officer" merely distinguishes between the two law-enforcement officers present at the administration of the test and makes it clear that the breathalyzer operator who gives the four-part warning set out in subsection (a) is *not* the officer authorized to request that the petitioner take the test.

The result in this case has been reached by a consideration of legislative history and by construing G.S. 20-16.2(c) contextually and harmoniously with the other subsections of G.S. 20-16.2 for

the purpose of ascertaining legislative intent, the controlling factor in the interpretation of a statute. The result reached by the trial court is understandable in view of the statutory language of G.S. 20-16.2(c) above. Apparently the piecemeal amendment of various sections of this complicated statute has caused conflicting phraseology and has created difficulties in interpretation which the Legislature should correct by clarifying amendments.

Reversed and remanded for proceedings consistent with this opinion.

Judges PARKER and ERWIN concur.