HOWARD v. SQUARE-D CO.

[128 N.C. App. 303 (1998)]

———————————

MARY HOWARD, Employee, Plaintiff, v. SQUARE-D COMPANY, Employer, and SELF-INSURED (JAMES C. GREEN AND COMPANY, SERVICING AGENT), Defendant

No. COA97-521

(Filed 6 January 1998)

1. **Workers' Compensation § 353 (NCI4th)— occupational disease—time for filing claim**

    The two-year period within which a claim for benefits for an occupational disease must be filed begins running when an employee has suffered injury from an occupational disease which renders the employee incapable of earning, at any job, the wages the employee was receiving at the time of the incapacity, and the employee is informed by competent medical authority of the nature and work-related cause of the disease. N.C.G.S. § 97-58.

2. **Workers' Compensation § 353 (NCI4th)— carpel tunnel syndrome—time for filing claim—beginning of two-year period**

    The two-year period for plaintiff to file a claim for disability benefits for carpel tunnel syndrome did not begin when she took a leave of absence for six days after being informed by her doctor that she had this occupational disease since this leave of absence was not compensable for a disability; rather, the two-year period

**HOWARD v. SQUARE-D CO.**

[128 N.C. App. 303 (1998)]

commenced at a subsequent time when plaintiff was unable to earn wages for four weeks. N.C.G.S. § 97-28.

Appeal by plaintiff from opinion and award of the Industrial Commission entered 21 January 1997. Heard in the Court of Appeals 3 December 1997.

*Young, Moore & Henderson, P.A., by John A. Michaels and Dawn M. Dillon, for plaintiff-appellant.*

*Teague, Campbell, Dennis & Gorham, by Dayle Flammia, for defendant-appellee Square-D Company.*

LEWIS, Judge.

Plaintiff appeals an order of the Industrial Commission that concluded that she had not filed her claim for occupational disease within the two-year period prescribed by N.C. Gen. Stat. § 97-58 (1991). As a result, the Commission held that it did not have jurisdiction over the claim and her right to compensation was consequently barred. We reverse.

Plaintiff is 49 years of age and has a high school diploma. She began working for defendant employer on 11 November 1987 and worked full time in various jobs until 24 January 1992. She performed assembly work as a machine operator for the first year of her employment and then worked as a gluing operator until January 1991. As a gluing operator, plaintiff assembled parts by using her hands to handle and rotate small steel parts in order to glue a shading coil onto them. Plaintiff would assemble 400 to 600 parts per eight-hour shift depending upon the size of the part.

In the summer of 1990, plaintiff began experiencing symptoms primarily after work, including pain in her left wrist, trouble lifting and grasping with her left hand, and numbness and tingling in her left hand, which caused pain in her left middle finger and right elbow.

Plaintiff first sought medical treatment for her left hand and wrist, and right elbow symptoms in June 1990. Between June 1990 and 11 September 1990, plaintiff received regular, conservative medical treatment for her left hand and left wrist symptoms. Her physician also restricted her to light duty work and prohibited repetitive activity. On 11 September 1990, plaintiff's doctor informed her that she had left carpal tunnel syndrome. From 11 September 1990 through 17 September 1990, plaintiff did not work and instead took a

leave-of-absence from employer and received voluntary short term disability benefits provided by employer. Plaintiff returned to work after a six-day leave and worked continuously until 24 January 1992. At that time her left wrist was placed in a cast for four weeks and she was unable to work. Following a series of short unsuccessful returns to work and stints in alternative replacement jobs, plaintiff filed Industrial Commission Form 18, Notice of Accident to Employer, on 25 February 1993 seeking compensation for her occupational disease.

The Full Commission issued an opinion and award 21 January 1997 affirming the deputy commissioner's dismissal of plaintiff's claim. In particular, the Commission found:

7. From 11 September 1990 through 17 September 1990, plaintiff was unable to earn the wages she was earning on 11 September 1990 in the same or in any other employment as a result of her left carpal tunnel syndrome, during which time plaintiff took a leave-of-absence from her employment with defendant employer.

9. Plaintiff failed to file a claim for her left carpal tunnel syndrome both within two years of the date she was first advised by a competent medical authority that she had left carpal tunnel syndrome and that the same was work related, and within two years of the date on which she first became unable to earn the wages she was earning on 11 September 1990 in the same or in any other employment as a result of her left carpal tunnel syndrome.

Commissioner Bernadine Ballance filed a dissenting opinion. Plaintiff appeals.

[1] The issue presented by this appeal is whether the plaintiff filed her claim within the time prescribed by G.S. 97-58. G.S. 97-58 provides in relevant part:

(b) . . . The time of notice of an occupational disease shall run from the date that the employee has been advised by competent medical authority that he has same.

(c) The right to compensation for occupational disease shall be barred unless a claim be filed with the Industrial Commission within two years after death, disability, or disablement as the case may be.

Our Supreme Court held in *Taylor v. J.P. Stevens & Co.*, 300 N.C. 94, 265 S.E.2d 144 (1980), that subsections (b) and (c) of G.S. 97-58,

*supra,* must be construed in pari materia. When so construed, the Court held that the two-year period within which claims for benefits for an occupational disease must be filed begins running when an employee has suffered injury from an occupational disease which renders the employee incapable of earning, at any job, the wages the employee was receiving at the time of the incapacity, and the employee is informed by competent medical authority of the nature and work-related cause of the disease. *Id.* at 98-99, 265 S.E.2d at 147. Moreover, the two-year period for filing claims for an occupational disease does not begin to run until all of these factors exist. *Dowdy v. Fieldcrest,* 308 N.C. 701, 706, 304 S.E.2d 215, 218-19.

**[2]** It is clear from the record that plaintiff was "informed by competent medical authority" of her occupational disease on 11 September 1990. Thus, the critical question is at what time did plaintiff become incapable of earning, at any job, the wages she was receiving prior to her disability. Defendant employer contends that plaintiff's disability commenced 11 September 1990 when she took a leave of absence for six days after being informed by her doctor of her disease. Plaintiff contends that her inability to work for six days is insufficient under the Workers' Compensation Act, as a matter of law, to claim a disability. General Statute section 97-54 provides that in all cases of occupational disease other than asbestosis or silicosis, "disablement shall be equivalent to disability as defined in G.S. 97-2(9)." N.C. Gen. Stat. § 97-2(9) (1991) provides, "The term disability means incapacity because of injury to earn the wages which the employee was receiving at the time of injury in the same or any other employment." However, N.C. Gen. Stat. § 97-28 (1991). provides:

> No compensation . . . shall be allowed for the first seven calendar days of disability resulting from an *injury* . . . Nothing in this section shall prevent an employer from allowing an employee to use paid sick leave, vacation or annual leave, or disability benefits provided directly by the employer during the first seven calendar days of a disability.

(emphasis added).

The Workers' Compensation Act treats an occupational disease as an injury and applies all applicable provisions thereto; "[d]isablement . . . of an employee from an occupational disease described in G.S. 97-53 shall be treated as the happening of an injury by accident within the meaning of the . . . Act." N.C.G.S. § 97-52 (1991). Thus, con-

struing the aforementioned statutes together, plaintiff's six day leave-of-absence was incompensable under the Act for disability compensation. Plaintiff did not incur a compensable period of disability until 24 January 1992 when she was unable to earn wages for four weeks. It was at that time that both factors under *Taylor* existed, and at that time that the statute began to run on her claim for occupational disease. Thus, plaintiff had two years from 24 January 1992 in which to file her claim with the Industrial Commission. Plaintiff filed her claim 25 February 1993; therefore, her claim was timely filed.

Therefore, the opinion and award of the Industrial Commission is hereby

Reversed.

Judges WALKER and TIMMONS-GOODSON concur.